JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Stephen Ogletree appeals from his conviction for two counts of gross sexual imposition. For the reasons set forth below, we affirm.
 {¶ 2} On October 16, 2003, defendant was indicted for four counts of gross sexual imposition, in violation of R.C. 2907.05. He pled not guilty and the matter proceeded to a bench trial on January 12, 2004.
 {¶ 3} For its case, the state presented the testimony of the victim, her mother, her grandmother, and Cleveland Police Det. Alan Strickler.
 {¶ 4} The victim, who was born in February 1987, testified that defendant was her mother's boyfriend in 2002, and was at her home every day and frequently slept there. On four or five occasions when the victim's mother was not present, defendant unexpectedly kissed the victim while she was doing chores. She felt shocked and terrified after these incidents.
 {¶ 5} In August 2002, defendant offered to teach the victim how to ride his motorcycle. She sat on the front portion of the seat and held the handle bars and defendant sat in back and held her around the waist. While the vehicle was moving, defendant lifted her shirt, and unbuckled her bra. He told her to "flash" her breasts but she refused. Defendant then grabbed both of her breasts. The victim stated that she was terrified and did not tell anyone of the incident.
 {¶ 6} On another occasion, while the victim was lying on the couch watching television and her mother was upstairs, defendant straddled her and massaged her shoulders. A few minutes later, he grabbed her thighs. She felt uncomfortable and did not tell her mother.
 {¶ 7} On another night, defendant came into the victim's bed. He reached under the blankets and under her clothing then placed his hand on her buttocks. The door was opened, and defendant removed his hand as her mother approached, but later resumed the touching. In a final incident, defendant insisted that he had to talk to the victim right after she had finished showering. She told him to wait until she got dressed, and he told her that he had seen everything before, that what she had was nothing new, and that he just wanted to talk to her. He entered her room to talk to her, and she asked him to leave so that she could dress. Defendant insisted that he had seen everything before, repeated that what she had was nothing new, and continued speaking with her. He would not leave, so the victim went into her closet and got dressed there.
 {¶ 8} According to the victim, defendant has a dominating personality. He also asked her to perform chores around the house, and frequently reminded her that her father was not around.
 {¶ 9} The girl stated that she did not immediately tell her mother because she was frightened and did not know what to do. She did, however, tell her grandmother about the incidents. She also sent her mother an e-mail, dated August 29, 2002, in which she indicated that defendant was a pervert, that he had touched her chest while they were riding the motorcycle, that he had touched her buttocks, and had insisted on speaking with her while she was dressed only in a towel.
 {¶ 10} The victim later described the incidents to a social worker from the Department of Children Services and to Det. Alan Strickler of the Cleveland Police Department. By December 2002, she moved in with her grandmother.
 {¶ 11} On cross-examination, the victim stated that she attends school in Warrensville Heights, rather than in Cleveland, the city where her mother resides. She also admitted that defendant did not use physical force or threaten her, but she stated that she was scared during the incidents, and afraid of what defendant would do to her.
 {¶ 12} The victim's mother testified that before she began dating defendant, she and her daughter had a good relationship. Later, the victim became aggravated and withdrawn and they would argue when defendant came to visit.
 {¶ 13} The mother also testified that defendant characterized himself as a "fatherly figure" to the victim. She had seen defendant in the victim's bedroom. The victim was sad one day, and after questioning, reported that defendant had kissed her. The mother asked defendant about the incident and he stated that he had kissed the girl in a friendly way. With regard to the other incidents, the mother stated that she was unable to retrieve the e-mail that the victim had sent to her. The victim and her grandmother subsequently met with defendant and the victim's mother and the victim stated that defendant had touched her inappropriately. At this time, defendant became very angry, began screaming then stormed out of the house. He later threatened that if he went to jail, he would break into the mother's house and kill her, the grandmother, and the girl. The woman called the Department of Children and Family Services and also spoke to Det. Strickland.
 {¶ 14} The mother admitted that she did not see defendant touch the girl inappropriately. She also recalled that he wore gloves and a jacket while he rode his motorcycle.
 {¶ 15} Det. Strickler, of the Sex Crimes and Child Abuse Unit, testified that it is common for children to delay making disclosures of sexual abuse. With regard to this matter, he testified that he spoke to the victim, her mother, and grandmother. He advised defendant of his rights and obtained a written statement from him. On a portion of the written statement, defendant acknowledged that he understood his constitutional rights and agreed to give a statement to the police.
 {¶ 16} In the statement, defendant admitted that he is a "control freak." He also admitted that he had hugged and kissed the victim and that she got dressed in her closet when he attempted to speak with her right after she got out of the shower. He asserted that she had fabricated the incident because he reprimanded her about her attitude and mentioned that her father was incarcerated. Defendant denied that he had touched her breasts while riding the motorcycle but he did not deny touching her buttocks.
 {¶ 17} The grandmother testified that defendant is intimidating, forceful and very controlling. She further testified that her granddaughter stayed with her during the entire month of August 2002 after reporting that she and her mother had an argument about the defendant. The grandmother asked her why she had not told her mother and the victim said that she did not know what to do when the incidents occurred. The grandmother, the victim and the mother agreed to meet defendant to discuss the girl's allegations. At this time, defendant began yelling, and raising other issues which were not germane to the girl's allegations. According to the witness, defendant did not deny or confirm the allegations; he just screamed at her.
 {¶ 18} The grandmother subsequently spoke with a social worker from the Department of Children and Family Services and also spoke with Det. Strickler.
 {¶ 19} Renita Eslick testified on behalf of defendant and stated that she knows him well, that she is familiar with his reputation, and that she believes that he is an honest person who would not lie. She was unaware that defendant was convicted of drug trafficking twice in 1993, and that he violated his probation in 1998. She stated, however, that this does not alter her opinion of him.
 {¶ 20} Eric Elders testified that he has known defendant for five years and has never known him to lie or to be a controlling person. He further testified that defendant had a reputation as being a truthful person. He did not know of defendant's prior record but this did not alter his opinion of him.
 {¶ 21} Rochelle Meredith testified that she has known defendant for over twenty years and she has never known him to lie. According to Meredith, defendant has a reputation for being a truthful person. She did not know of his record, but she was firmly convinced of his good character.
 {¶ 22} The trial court convicted defendant of gross sexual imposition as charged in Counts Three of the indictment, i.e., the incident wherein defendant was charged with touching the victim's buttocks, and Count Four of the indictment, i.e., the incident wherein defendant was charged with touching her breasts. The court sentenced defendant to five years of community control sanctions. The court further determined that defendant is a sexually oriented offender. Defendant now appeals and assigns four errors for our review.
 {¶ 23} Defendant's first assignment of error states:
 {¶ 24} "Defendant-Appellant's convictions were contrary to the manifest weight of the evidence."
 {¶ 25} Within this assignment of error, defendant asserts that the victim witness was not credible, and that her testimony was vague, conflicting, fragmentary, and illogical. He further complains that the state failed to present evidence that he had sexual contact with her for "the purpose of arousing or gratifying either person," within the definition of gross sexual imposition as set forth in R.C. 2907.01(B).
 {¶ 26} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541. "Weight is not a question of mathematics, but depends on its effect in inducing belief." Id.
 {¶ 27} In reviewing a claim challenging the manifest weight of the evidence, the test to be used is as follows:
 {¶ 28} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting Tibbs v.Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220,72 L.Ed.2d 652, 663. See, also, State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 29} Moreover, the power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Tibbs v. Florida, supra; Statev. Thompkins, supra; State v. Martin, supra.
 {¶ 30} With regard to the offenses at issue here, gross sexual imposition, is defined in R.C. 2907.05(A)(1), as follows:
 {¶ 31} "No person shall have sexual contact with another, not the spouse of the offender; * * * when * * * the offender purposely compels the other person * * * to submit by force or threat of force." Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 32} Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other."State v. Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph one of the syllabus. Those who hold a position of authority over a child do not require any explicit threats or displays of force. Id.
 {¶ 33} "Sexual contact" has been defined as "any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." State v. Astley (1987),36 Ohio App.3d 247, 250, 523 N.E.2d 322. There is no requirement that there be direct testimony regarding sexual arousal or gratification. Id.; State v. Cobb (1991), 81 Ohio App.3d 179,610 N.E.2d 1009; In Re Anderson (1996), 116 Ohio App.3d 441,688 N.E.2d 545.
 {¶ 34} In the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer appellant was motivated by desires for sexual arousal or gratification from the "type, nature and circumstances of the contact, along with the personality of the defendant." State v. Cobb, supra; Statev. Maybury (Aug. 11, 1994), Cuyahoga App. No. 65831; State v.Uhler (1992), 80 Ohio App.3d 113, 123, 608 N.E.2d 1091. Accordingly, in the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer that a defendant was motivated by a desire for sexual arousal or gratification from the totality of the circumstances. State v.Cobb, supra; State v. Edwards, Cuyahoga App. No. 81351, 2003-Ohio-998; State v. Oddi, Delaware App. No. 02CAA01005, 2002-Ohio-5926.
 {¶ 35} In this matter, the state's evidence established that defendant acted as a "fatherly figure" to the victim, had authority over her, was frequently at the home when her mother was not present and reminded her that her real father was not available. He used his authority to speak with the victim, despite her protestations, while she was dressed only in a towel, and there was evidence that defendant has a dominant and forceful personality. The victim testified that defendant touched her breasts while she was driving his motorcycle, and that he also came into her bed and touched her buttocks. Moreover, based upon the secretive, surreptitious nature of the contact, that it was calculated in such a manner to occur while she was unable to resist, as in the incident which occurred while defendant was "teaching her to ride a motorcycle" and sitting behind her, and while she was alone in her room, and because the contact was not for any legitimate purpose, the finder of fact did not lose its way in concluding that the contact was motivated by a desire for sexual arousal or gratification. Accord State v. Rutan (Dec. 16, 1997), Franklin App. No. 97APA03-389; State v. Kennedy
(June 21, 1990), Cuyahoga App. No. 57147.
 {¶ 36} The first assignment of error is without merit.
 {¶ 37} Defendant's second assignment of error states:
 {¶ 38} "The trial court committed reversible error when it permitted the state to introduce prejudicial testimony regarding the character of the accused."
 {¶ 39} Defendant next complains that the trial court erred in permitting the state to introduce evidence that he has a "controlling personality," and in questioning his character witnesses about their knowledge of his past record.
 {¶ 40} As an initial matter, we note that an appellate court will indulge "in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." State v. Post (1987),32 Ohio St.3d 380, 384, 513 N.E.2d 754, 759, citing State v.White (1968), 15 Ohio St.2d 146, 151, 239 N.E.2d 65, 70.
 {¶ 41} We further note that defendant raised no objection to these matters below, so we consider the claims for plain error. Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice.State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise." State v. Moreland
(1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, State v.Phillips, 74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.
 {¶ 42} With regard to the state's evidence that defendant has a "controlling personality," we note that the state was required to show that defendant had sexual contact with the victim by force or threat of force. R.C. 2907.05. Pursuant to R.C.2901.01(A), force is "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Subtle and psychological forms of coercion may be sufficient to show force. State v. Eskridge (1988),38 Ohio St.3d 56, 59, 526 N.E.2d 304; State v. Riffle (1996),110 Ohio App.3d 554, 561, 674 N.E.2d 1214. Accordingly, in this matter, we cannot conclude that the trial court erred in permitting the state to present evidence that defendant has a controlling personality as this evidence, in conjunction with other evidence that the victim felt uncomfortable and scared, that defendant spent considerable time at her home and evidence that he presented himself as a fatherly figure to her, had some supervisory authority over her, and was indeed able to order himself into her room against her wishes while she was trying to dress. Accordingly, this evidence was material to the issue of whether the contact occurred by force.
 {¶ 43} With regard to the state's cross-examination of defendant's character witnesses, we note that Evid.R. 405(A) provides as follows:
 {¶ 44} "Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry isallowable into relevant specific instances of conduct." (Emphasis added.)
 {¶ 45} It is well-settled that by presenting evidence of a defendant's good character, a defense attorney "opens the door" to cross-examination of such character witnesses regarding relevant specific instances of appellant's past conduct. Evid.R. 405(A). State v. Collins (1994), 97 Ohio App.3d 438,646 N.E.2d 1142; State v. Hart (1991), 72 Ohio App.3d 92, 97-100,593 N.E.2d 463. Such instances can include appellant's prior criminal convictions. State v. Bailey (Apr. 9, 1987), Cuyahoga App. No. 51968; State v. Hester, Franklin App. No. 02AP-401, 2002-Ohio-6966; State v. Wright (1988), 48 Ohio St.3d 5,548 N.E.2d 923.
 {¶ 46} In this case, defendant presented character witnesses who testified that he has a reputation for honesty. Accordingly, under Evid.R. 405(A), the state was permitted to cross-examine these witnesses regarding their knowledge of specific instances of defendant's conduct.
 {¶ 47} This assignment of error is without merit.
 {¶ 48} Defendant's third assignment of error states:
 {¶ 49} "Defendant-Appellant was denied the effective assistance of counsel in violation of the Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 50} Within this assignment of error, defendant asserts that his trial counsel was ineffective in failing to move for suppression of his statement to police and in permitting the prosecuting attorney to question defendant's character witnesses as to their knowledge of whether defendant had any convictions in forming their assessment of his character.
 {¶ 51} In order to establish a claim of ineffective assistance of counsel, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 104 S.Ct. 2052; Statev. Noling, 98 Ohio St.3d 44, 65, 2002-Ohio-7044, 781 N.E.2d 88.
 {¶ 52} The court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland,466 U.S. at 690, 80 L. Ed.2d at 695. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate. Id. In Ohio, a properly licensed attorney is presumed competent. Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 301, 209 N.E.2d 164.
 {¶ 53} As the Strickland Court stated, a reviewing court:
 {¶ 54} "[m]ust indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. 466 U.S. at 689; see, also,State v. Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476, certiorari denied (1988), 488 U.S. 975, 102 L. Ed. 2d 550,109 S. Ct. 515.
 {¶ 55} Moreover, counsel does not perform ineffectively by failing to file futile motions. See State v. Martin (1983),20 Ohio App.3d 172, 174, 485 N.E.2d 717. "Where the record contains no evidence which would justify the filing of a motion to suppress, the [defendant] has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Tibbetts, 92 Ohio St.3d 146, 166,2001-Ohio-132, 749 N.E.2d 226, quoting State v. Gibson (1980),69 Ohio App.2d 91, 95, 430 N.E.2d 954.
 {¶ 56} With regard to the admission of defendant's statement to police, it is clear that a statement made by an accused in the course of a custodial interrogation is admissible at trial only upon proof that the accused was advised of his constitutional rights and that the accused voluntarily, knowingly, and intelligently waived those rights. State v. Dailey (1990),53 Ohio St.3d 88, 91, 559 N.E.2d 459, citing Miranda v. Arizona
(1966) 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694. See, also, State v. Hamilton, Clermont App. No. CA2001-04-044, 2002-Ohio-560.
 {¶ 57} In this matter, it is undisputed that the statement was made after Miranda rights had been read to defendant and the written form contains the written warnings. Consequently, defendant's statement would have been deemed to have been made voluntarily, with full knowledge of his right to remain silent, and defendant's trial counsel could not have prevailed on a motion to suppress the statement. Having failed to establish that counsel violated an essential duty, defendant cannot set forth a claim of ineffective assistance of counsel. Accord State v.Wolf, Cuyahoga App. No. 83632, 2004-Ohio-5023.
 {¶ 58} With regard to the state's cross-examination of defendant's character witnesses, as noted previously, the state was permitted to cross-examine them under Evid.R. 405(A) regarding their knowledge of specific instances of defendant's conduct. Accordingly, defendant's trial counsel committed no error in connection with this cross-examination. In the absence of an error, this claim of ineffective assistance must fail.
 {¶ 59} The third assignment of error is without merit.
 {¶ 60} Defendant's fourth assignment of error states:
 {¶ 61} "The trial court erroneously classified defendant-appellant as a sexually oriented offender."
 {¶ 62} A sexually oriented offender is a person who has committed a "sexually oriented offense," as defined by R.C.2950.01(D), and who does not meet the definition of either a habitual sex offender or a sexual predator. State v. Cook
(1998), 83 Ohio St.3d 404, 407, 700 N.E.2d 570. R.C. 2950.01(D) provides in relevant part:
 {¶ 63} "Sexually oriented offense" means any of the following:
 {¶ 64} "(1) Regardless of the age of the victim of the offense, a violation of section 2907.02, 2907.03, or 2907.05 of the Revised Code[.]"
 {¶ 65} The Supreme Court of Ohio held that "* * * if a defendant has been convicted of a sexually oriented offense as defined in R.C. 2950.01(D), and is neither a habitual sex offender nor a sexual predator, the sexually oriented offender designation attaches as a matter of law." State v. Hayden,96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502.
 {¶ 66} Defendant was convicted of two counts of gross sexual imposition, in violation of R.C. 2907.05. Accordingly, he was convicted of two sexually oriented offenses and is, as a matter of law, a sexually oriented offender. See State v. Richardson
(Aug. 10, 2001), Lucas App. No. L-00-1195; State v. Redden
(Mar. 19, 1999), Lucas App. No. L-98-1087. As such, we cannot find that the trial court erred in finding appellant to be a sexually oriented offender.
 {¶ 67} The fourth assignment of error is not well-taken.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Cooney, J., concur.