JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Appellant, Earl Hines, appeals from the judgment of conviction entered in the Cuyahoga County Court of Common Pleas. For the reasons stated herein, we affirm.
 {¶ 2} On February 27, 2007, Hines was indicted on one count of attempted murder, two counts of felonious assault, and one count of having a weapon while under disability. The attempted murder and felonious assault counts each contained one-and three-year firearm specifications, as well as a notice of prior conviction and a repeat violent offender specification. The charges stemmed from an incident occurring on February 22, 2007, during which Hines shot Lorenzo Douglas ("the victim") in the abdomen. The matter proceeded to a jury trial.
 {¶ 3} The testimony at trial revealed that Hines and the victim were both residents at King's Path Condominiums in North Olmsted. On the date of the incident, the victim entered the lobby, after dropping his child off at a bus stop. Hines was sitting on a couch in the lobby, and the victim called him a "snitch." The victim then boarded an elevator with three other parents who were present.
 {¶ 4} Hines stood up, exchanged words with the victim, approached the elevator while reaching in his pocket, pulled out a gun, and shot the victim in the abdomen. During the exchange, Hines told the victim he had done ten years in prison. Profanities were also exchanged.
 {¶ 5} After Hines shot the victim, the other occupants of the elevator fled. The victim fell to the elevator floor. The victim later testified that Hines walked toward him and *Page 3 
was pulling the trigger of the gun. The victim stated, "I thought I was dead," but the gun kept clicking and did not go off. He tried to exit the elevator, but Hines grabbed him. Ultimately, the victim got off the elevator and exited the building. Hines also exited the building and said to the victim, "I told you not to touch me," or something to that effect. The victim denied touching Hines prior to the shooting, which testimony was corroborated by other witnesses.
 {¶ 6} After Hines returned to the building, another tenant overheard Hines in the hallway on his cell phone saying that he shot somebody. EMS arrived and took the victim to the hospital, where emergency surgery was performed. Medical testimony revealed that the victim sustained a lethal and potentially life-threatening wound. The bullet was in the victim's abdominal wall, was not located, and was left in the victim.
 {¶ 7} Stacey Ludlam, one of the witnesses to the shooting, testified that she observed the victim and Hines exchange words. As the exchange was occurring, she turned her head away. She then heard one of the other occupants of the elevator make a statement that scared her and made her look. She saw that Hines had a silver object in his hand, and she heard a "pop." She testified that the victim had his hands up before the gun went off. Further, she did not see the victim touch, grab, push, or pull Hines prior to the shooting.
 {¶ 8} Jason Brown, another witness to the shooting, testified that the victim did not put his hands on Hines. He stated that the two were exchanging words, including profanities; that Hines had his hand in his pocket as soon as he got up off the couch; that as Hines walked into the elevator he started getting loud with the victim; and that Hines pulled out the gun and *Page 4 
shot the victim without hesitation. Brown also stated that when Hines exited the building, he made a comment to the victim and was still trying to pull the trigger, but the gun did not go off.
 {¶ 9} Police officers recovered a spent bullet casing from the floor of the elevator. They searched Hines' apartment and found a handgun, a holster, and two ammunition magazines with bullets in them. They also found a single bullet on the floor that had a firing pin impression mark, signifying a misfired cartridge. The spent casing was consistent with the recovered handgun.
 {¶ 10} Hines testified that he had lived in the building for seven years, during which time he claimed he was mistreated by other residents. He testified to an alleged prior incident in which the victim had grabbed him by the throat and pushed him aside. Hines had called the police after a number of incidents and felt "it made people hate me enough to try to hurt me, harm me, or even kill me." Hines claimed that he was carrying a weapon on the morning of February 22, 2007, out of fear. Hines testified that when the victim entered the building, he was yelling "snitch" and curse words at Hines. He stated that the victim went into the elevator, threatened him, and then grabbed him by the throat and was choking him. Hines testified that he thought the victim was going to kill him, that Hines reached for his gun, and that the gun went off as he was trying to raise it to shoot the victim in the shoulder. Hines stated he called 911 on the victim's cell phone and gave the phone to the victim. When the victim went out of the front door, Hines stated, "Do not put your hands on me any *Page 5 
more." Hines did not receive any medical attention for the alleged choking he sustained at the hands of the victim. Following the shooting, Hines made a phone call to his mother.
 {¶ 11} The jury convicted Hines on all counts. The trial court merged the felonious assault convictions and sentenced Hines to a total term of incarceration of twenty-five years.
 {¶ 12} Hines has appealed his conviction and has raised eight assignments of error for our review. His first assignment of error provides as follows:
 {¶ 13} "I. Appellant was denied a fair trial due to ineffective assistance of counsel in violation of the Sixth andFourteenth Amendment[s] of the United States Constitution."
 {¶ 14} Hines claims that his counsel was ineffective for (1) failing to prevent and eliciting the admission of prejudicial character evidence against him; (2) undermining his case during closing arguments; (3) failing to request instructions for the inferior offenses of attempted voluntary manslaughter and aggravated assault; and (4) the cumulative effect of counsel's errors, which deprived Hines of his right to a fair trial.
 {¶ 15} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of *Page 6 
professional assistance. Id. at 689. Generally, debatable trial tactics and strategies do not constitute ineffective assistance of counsel.State v. Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-171; State v.Clayton (1980), 62 Ohio St.2d 45.
 {¶ 16} In this case, defense counsel deliberately elicited testimony from Hines concerning his prior convictions, including a 1976 felonious assault conviction, which was the subject of the prior conviction specifications, as well as carrying a concealed weapon and driving a stolen car, neither of which were part of the indictment in this matter. When the trial court questioned this strategy, defense counsel represented that this was part of his trial strategy and that he had discussed the tactic with Hines. Even with the trial court's caution, defense counsel chose to pursue this strategy. Defense counsel believed that Hines would offer a favorable retelling of his felonious assault conviction and that the strategy would anticipate the prosecution's attempt to raise the prior convictions.
 {¶ 17} We find that this was a questionable trial strategy that entailed the introduction of other crimes, and details thereof, which otherwise may not have come before the jury. We caution that it has been recognized that "evidence of other crimes which come before the jury due to defense counsel's neglect, ignorance or disregard of defendant's rights, and which bears no reasonable relationship to a legitimate trial strategy, will be sufficient to render the assistance of counsel ineffective." State v. Hester, Franklin App. No. 02AP-401, 2002-Ohio-6966, citing State v. Rutledge (Jun. 1, 1993), Franklin App. No. 92-AP-1401.
 {¶ 18} In this case, Hines admitted that he shot the victim. The defense was that Hines had been victimized by residents of the building, that he carried a gun out of fear, and that he *Page 7 
shot the victim in self-defense. Defense counsel's apparent trial strategy was to bolster Hines' credibility and character, as well as to anticipate the introduction of prior convictions, by eliciting testimony from Hines about his criminal past.[1] Although the strategy is debatable, we cannot say this was not a legitimate trial strategy. Therefore, we find that defense counsel's performance was not deficient in this regard.
 {¶ 19} Hines further argues that defense counsel failed to object to the prosecutor's introduction of a prior arrest that did not lead to a conviction for possessing firearms. Considering the other evidence that was presented in this case, Hines has not shown that but for the admission of testimony regarding his prior arrest the result of the trial would have been different.
 {¶ 20} Hines also challenges the remarks made by defense counsel during closing argument. He complains that counsel (1) conceded that the state met its burden as to all offenses in the indictment, (2) used sarcasm to suggest the jury would have to believe Hines was a "psycho nut job" or "bald-faced liar" to find him guilty, (3) undermined Hines' credibility by commenting that he did not believe that Stacey Ludlam lied in her testimony. Upon the record in this case, we cannot say that defense counsel's remarks amounted to *Page 8 
ineffective assistance of counsel. Our review reflects that defense counsel chose to concede that the state had probably proved all of the elements of the charged offenses in order to strengthen the claim of self-defense. Further, we cannot say that the remarks by defense counsel prejudiced the result of the proceeding.
 {¶ 21} Next, Hines argues that defense counsel failed to request instructions for the inferior offenses of attempted voluntary manslaughter and aggravated assault. Defense counsel's failure to pursue a lesser included offense does not per se establish ineffectiveness.State v. Clayton (1980), 62 Ohio St.2d 45. Moreover, "[a]s discussed supra, a reviewing court may not second-guess decisions of counsel that can be considered matters of trial strategy. (Internal citation omitted.) Debatable strategic and tactical decisions may not form the basis of a claim of ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy was available." State v.Baker, 159 Ohio App.3d 462, 466, 2005-Ohio-45 (finding trial counsel's failure to request aggravated assault instruction as a lesser included offense of felonious assault and attempted murder was reasonable where appellant argued self-defense); see, also, State v. Henry, Clark App. No. 2007 CA 73, 2008-Ohio-3484. Here, defense counsel reasonably could have concluded that the best strategy was to focus on only one theory: self-defense. We do not find this decision amounted to ineffective assistance of counsel.
 {¶ 22} Finally, Hines argues that the cumulative effect of counsel's errors deprived him of a fair trial. We find that Hines received a fair trial and that his claimed errors did not rise to the level of ineffective assistance of counsel, and we reject his "cumulative error" *Page 9 
argument. Further, we find that the totality of evidence indicates that the jury would have come to the same conclusion regardless of the alleged errors. See State v. Bradley (1989), 42 Ohio St.3d 136, 142-144. The testimony in this case reflects that Hines shot the victim, without hesitation, after being called a snitch and that he again tried to shoot the victim, but the gun would not fire. Insofar as Hines claimed he acted in self-defense, there was no evidence to substantiate Hines' claim that he was being choked by the victim. Further, the victim's testimony was corroborated by the testimony of two witnesses, as well as by the physical evidence. Upon this record, we cannot say the result of the legal proceeding would have been different but for defense counsel's claimed ineffectiveness. Hines' first assignment of error is overruled.
 {¶ 23} Hines' second and third assignments of error provide as follows:
 {¶ 24} "II. The trial court committed plain error by failing to strike testimony of appellant's inadmissible prior arrest and convictions from the record and failing to give a curative instruction to the jury."
 {¶ 25} "III. The state committed prosecutorial misconduct by inquiring into appellant's prior arrest."
 {¶ 26} Hines claims the prosecutor inappropriately cross-examined him about being arrested at his workplace in 2002 for possessing firearms, of which charge he was never convicted. He also argues the trial court erred in failing to strike the testimony concerning his prior arrest, as well as his prior convictions, and by failing to give a curative instruction to the jury. As no objection was raised below, we review for plain error. "Plain error is *Page 10 
`obvious,' State v. Barnes (2002), 94 Ohio St.3d 21, 27, 2002 Ohio 68,759 N.E.2d 1240, and, `but for the error, the outcome of the trial clearly would have been otherwise.' See State v. Long (1978),53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus."State v. Johnson, 112 Ohio St.3d 210, 214, 2006-Ohio-6404.
 {¶ 27} As discussed above, defense counsel deliberately introduced Hines' prior convictions as part of his trial strategy. We do not find that the trial court erred in permitting defense counsel to pursue a reasonable trial strategy. Further, even were we to find that any of the convictions were proper subject for exclusion, we do not find that but for the claimed error, the outcome of the trial would have been different in light of the evidence in this case.
 {¶ 28} Insofar as Hines argues prosecutorial misconduct occurred, "the test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. The touchstone of the analysis is the fairness of the trial, not the culpability of the prosecutor." (Internal citations and quotations omitted.) State v. Davis, 116 Ohio St.3d 404, 437,2008-Ohio-2.
 {¶ 29} With respect to the prior arrest, the state argues that Hines "opened the door" and that the state sought to impeach his testimony that he "didn't need a gun anywhere outside the building" and that he "didn't have any problem with anyone outside the building." We disagree. Hines' testimony was in response to a question as to why he would leave the gun in a mailbox whenever he left the building. Hines' 2002 arrest had nothing to do with his reason for carrying a gun at the time of the incident herein. Accordingly, we do find that the introduction of the prior arrest was improper. *Page 11 
 {¶ 30} Nevertheless, upon the entire record, we do not find that the state's eliciting of testimony regarding the prior arrest or the court's failure to strike the testimony or provide a curative instruction prejudiced Hines' right to a fair trial or amounted to plain error. Hines' second and third assignments of error are overruled.
 {¶ 31} Hines' fourth assignment of error provides as follows:
 {¶ 32} "IV. The trial court erred by submitting the repeat violent offender specification to the jury."
 {¶ 33} Hines argues that the trial court erred in permitting evidence of the repeat violent offender specification to be presented to the jury and by submitting the specification to the jury for verdict. Hines cites R.C. 2941.149(B): "The court shall determine the issue of whether an offender is a repeat violent offender."
 {¶ 34} We recognize that R.C. 2941.149(B) states that the court shall determine the issue. In State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, the Ohio Supreme Court recognized as follows: "Unlike all other penalty enhancing specifications, the court, not the jury, makes the necessary factual findings for convicting the offender of being a repeat violent offender or a major drug offender. See R.C. 2941.149(B) and 2941.1410(B)." Absent from Foster is any further analysis of R.C. 2941.149(B).[2] Nevertheless, the court proceeded to sever the unconstitutional portions of R.C. 2929.14(D)(2) that required the trial *Page 12 
court to engage in fact-finding before enhancing a defendant's sentence for repeat violent offender specifications. Id. Thus, the court stated: "R.C. 2929.14(D)(2)(b) and (D)(3)(b) are capable of being severed. After the severance judicial factfinding is not required before imposition of additional penalties for repeat violent offender and major drug offender specifications." Id. at paragraph six of the syllabus. In the wakeof Foster, this court has stated: "[T]he imposition of an additional penalty for the repeat violent offender specification is constitutional. Thus, a judge may impose an additional one-to ten-year sentence on the repeat violent offender specification without judicial fact-finding."State v. Roberson, Cuyahoga App. No. 88338, 2007-Ohio-2772.
 {¶ 35} In this case, defense counsel did not move to bifurcate the repeat violent offender specification or object to the matter being submitted to the jury. Further, there was no prejudice in submitting the specification to the jury as Hines' prior convictions were already revealed at trial as part of his trial strategy. Additionally, no judicial fact-finding was required pursuant to Foster. Accordingly, we overrule Hines' fourth assignment of error.
 {¶ 36} Hines' fifth assignment of error provides as follows:
 {¶ 37} "V. The trial court erred by failing to give instructions on attempted voluntary manslaughter and aggravated assault." *Page 13 
 {¶ 38} Upon review of the record, we find that Hines failed to raise any objection to the trial court's jury instruction as given. Accordingly, we review for plain error. Crim. R. 52(B).
 {¶ 39} "[A]n instruction is not warranted every time any evidence is presented on a lesser included offense. There must be `sufficient evidence' to `allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.' (Emphasis sic.) State v. Shane, 63 Ohio St.3d [630,] 632-633, 590 N.E.2d 272." State v. Conway, 108 Ohio St.3d 214, 2006-Ohio-791. In this case, Hines fails to show "sufficient evidence" to warrant the instruction on the lesser included offenses and fails to cite any portions of the transcript in support of his assertion. Our review of the record reflects no abuse of discretion in this regard. Further, Hines did not raise the issue of instruction on lesser included offenses at trial, and has failed to demonstrate that, but for the trial court's failure to so instruct, the outcome at trial would clearly have been otherwise. Hines' fifth assignment of error is overruled.
 {¶ 40} Hines' sixth assignment of error provides as follows:
 {¶ 41} "VI. The trial court erred by failing to merge felonious assault and attempted murder for sentencing."
 {¶ 42} R.C. 2941.25, Ohio's allied offense statute, provides as follows:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. *Page 14 
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 43} In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the Ohio Supreme Court recently instructed as follows: "[C]ourts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, paragraph one of the syllabus.
 {¶ 44} Nonetheless, even when the offenses are of similar import under R.C. 2941.25(A), subsection (B) requires a court to review a defendant's conduct and permits convictions for two or more similar offenses if the offenses were either (1) committed separately, or (2) committed with a separate animus as to each. See id. at 57, citing State v.Blankenship (1988), 38 Ohio St.3d 116, 117.
 {¶ 45} While we can conceive of circumstances where the commission of an attempted murder necessarily results in a felonious assault, as well as circumstances where it does not so result, we need not determine whether the offenses are allied offenses of similar *Page 15 
import in this matter. Even if we assume, without deciding the issue, that the offenses are allied offenses, the record indicates that separate incidents were involved and that a separate animus existed as to each offense.
 {¶ 46} In determining whether acts are committed separately or with a separate animus, a court may consider the facts and circumstances of the case. Indeed, in determining whether there is a separate animus for the crimes of rape and kidnapping, a court must consider the restraint or movement of the victim and whether it is merely incidental to the underlying crime. The same logic should be applied when comparing other crimes.
 {¶ 47} The record here indicates that Hines initially shot the victim in the abdomen, causing the victim to fall to the elevator floor. The victim, whom Hines asserted he shot in self-defense, was wounded and did not pose any danger to Hines. Rather than calling for assistance, Hines proceeded to attempt to shoot the victim again, but the gun kept clicking and did not go off. The victim testified, "I thought I was dead." One of the witnesses also testified that Hines was still attempting to shoot the victim after following him outside the building. This subsequent action by Hines was separate and distinct and entailed a substantial independent risk of harm. Under these facts, a jury could find that Hines committed two separate crimes, the first shot that wounded the victim, being a felonious assault, and the subsequent attempt to shoot the victim, being an attempted murder. Therefore, we find that Hines could be convicted of both felonious assault and attempted murder. *Page 16 
 {¶ 48} We are cognizant of the fact that the circumstances of a case will have to be evaluated on a case-by-case basis. Not every act of shooting twice can or will be considered a separate and distinct offense. Conversely, where facts appear in the record that distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed, convictions for both may stand.
 {¶ 49} Hines' seventh assignment of error provides as follows:
 {¶ 50} "VII. The evidence presented by the state was insufficient to support a finding of guilt of attempted murder."
 {¶ 51} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 52} Hines argues that sufficient evidence was not presented to show that he acted with the specific intent required for attempted murder. In this case, the state was required to prove beyond a reasonable doubt that Hines attempted to purposely cause the death of the victim. R.C. 2903.02(A) and R.C. 2923.02(A). "A jury can reasonably infer that a defendant formed the specific intent to kill from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death, coupled with relevant circumstantial evidence."State v. Grace (Oct. 11, 1995), Summit App. No. 16950, quoting State v.Shue (1994), 97 Ohio App.3d 459, 468. *Page 17 
 {¶ 53} Viewing the evidence in a light most favorable to the prosecution, the record reflects that Hines had previous altercations with the victim; that Hines shot the victim in the abdomen, without hesitation, after being called a "snitch"; and that Hines again attempted to shoot the victim, but the gun would not fire. Upon considering the totality of the circumstances, we find that any rational trier of fact could have found that Hines intended to cause the death of the victim and that his conviction was supported by sufficient evidence. Hines' seventh assignment of error is overruled.
 {¶ 54} Hines' eighth assignment of error provides as follows:
 {¶ 55} "VIII. Appellant's convictions for attempted murder and felonious assault were against the manifest weight of the evidence."
 {¶ 56} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotes and citations omitted.) State v.Leonard, 104 Ohio St.3d at 68.
 {¶ 57} Hines argues that he satisfied his burden on the claim of self-defense by the manifest weight of the evidence. Hines further states that even without his self-defense *Page 18 
claim, the state failed to prove attempted murder and felonious assault beyond a reasonable doubt.
 {¶ 58} To establish self-defense, a defendant must show that (1) he was not at fault in creating the violent situation; (2) he had a bona fide belief he was in imminent danger of death or great bodily harm and his only means of escape was the use of force; and (3) he did not violate any duty to retreat or avoid the danger. State v. Williford
(1990), 49 Ohio St.3d 247, 249. If the defendant fails to prove any one of these elements by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense. Id.
 {¶ 59} We find that the record supports the jury's finding that appellant did not act in self-defense. Hines' testimony that he was being choked by the victim was contradicted by the victim's testimony that he did not touch Hines prior to the shooting. The victim's testimony was corroborated by Ludlam and Brown, both of whom witnessed the shooting. Ludlam stated that she did not see the victim touch Hines. Brown testified that the victim did not put his hands on Hines and that Hines shot the victim without hesitation.
 {¶ 60} Further, there was testimony that as Hines was walking to the elevator, he stated that he had done ten years in prison before. There also was testimony that after Hines shot the victim in the abdomen, the victim fell to the ground and heard a repeated clicking sound.
 {¶ 61} The physical evidence in the case included a misfired bullet with a depression in it. There was no evidence to substantiate Hines' claim that he had been choked by the victim. *Page 19 
 {¶ 62} Although Hines argues that there were some inconsistencies as to the details of what transpired, as well as certain evidentiary and credibility issues, upon the record before us, we do not find his convictions were against the weight of the evidence. Hines' eighth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., CONCURS; COLLEEN CONWAY COONEY, P.J., DISSENTS (WITH SEPARATE DISSENTING OPINION)
[1] "It is well-settled that by presenting evidence of a defendant's good character, a defense attorney `opens the door' to cross-examination of such character witnesses regarding relevant specific instances of appellant's past conduct. Evid. R. 405(A). Such instances can include appellant's prior criminal convictions." (Internal citations omitted.)State v. Ogletree, Cuyahoga App. No. 84446, 2004-Ohio-6297. In this situation, the prosecution is not limited to the type of convictions described in Evid. R. 609. See State v. Eldridge, Brown App. No. CA2002-10-021, 2003-Ohio-7002; State v. Hart (1991), 72 Ohio App.3d 92,99.
[2] In a pre-Foster decision, this court found: "The repeat violent offender specification and its enhanced penalty provision is implicated in Blakely, and the requirement at R.C. 2941.149(B) that the issue is determined by the court violates Blakely." State v. Malcolm, Cuyahoga App. No. 85351, 2005-Ohio-4133, following Blakely v. Washington (2004),542 U.S. 296.