[Cite as *State v. Ballard*, 2024-Ohio-4513.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

        Appellee

v.

Dwight Joseph Elliott Ballard

        Appellant

Court of Appeals No.    WD-23-048
                        WD-23-051

Trial Court No. 2022 CR 0417

**DECISION AND JUDGMENT**

Decided:  September 13, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Dan M. Weiss, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} In this consolidated appeal, appellant, Dwight Ballard, appeals the September 22, 2023 judgment of the Wood County Court of Common Pleas which, following a jury trial convicting him of aggravated possession of drugs, sentenced Ballard to an indefinite sentence of six to nine years of imprisonment. Because the trial court did not abuse its discretion by denying his motion for a mistrial, the judgment is affirmed.

## I. Facts and Procedural Background

{¶ 2} On October 6, 2022, a grand jury indicted Ballard on one count of aggravated trafficking in drugs, R.C. 2925.03, a first-degree felony, and one count of aggravated possession of drugs, R.C. 2925.11(A), a second-degree felony, both with forfeiture of money specifications. The charges stemmed from a traffic stop on December 30, 2021, where a baggie of unmarked pills and cash were recovered from Ballard's coat pocket. Ballard pleaded not guilty to the charges.

{¶ 3} On June 12, 2023, a jury trial commenced. Lake Township Police Officer Matthew Mariano testified that on December 30, 2021, at approximately 11:00 p.m., he was on road patrol when he observed a white Jeep with an expired registration sticker. Mariano initiated a traffic stop and smelled the odor of burnt marijuana as he approached the driver's side door. Mariano spoke with Ballard and ascertained that he did not have a valid driver's license. Mariano stated that there were three passengers in the vehicle, including one child.

{¶ 4} Officer Mariano asked if there were any drugs in the vehicle and Ballard handed him a "roach" or burnt marijuana cigarette. After running Ballard through dispatch, Mariano asked him to exit the vehicle. Ballard was patted down and Mariano pulled a wad of cash, $63 in single bills, and a baggie of 118 multicolored pills from his left jacket pocket. Mariano testified that based on his training and experience the pills appeared to be ecstasy. Ballard initially claimed they were pain medication but then admitted they were ecstasy. Ballard was placed under arrest and transported to the Wood

2.

County Jail and the evidence was logged in at the police station. Mariano identified the cash and baggie of pills recovered from Ballard and they were admitted into evidence.

{¶ 5} Ohio Bureau of Criminal Investigation forensic scientist, Samuel Fortner, testified that 118 multicolored pills weighing 19.43 grams were submitted for testing. He conducted a chemical analysis on 25 of the pills recovered from Ballard and stated that to a reasonable degree of scientific certainty the pills contained methamphetamine and cocaine.[1] Fortner stated that he did not conduct a quantitative analysis to confirm the specific amount of each substance. The July 10, 2022 report containing the findings was admitted into evidence. The State then rested.

{¶ 6} Ballard presented two witnesses on his behalf. Brandi Toney testified that on December 28, 2021, she, Ballard, and their minor daughter were staying at a hotel in Perrysburg following a robbery at their house. Toney stated that on December 30, 2021, after checking out of the hotel they pulled out of the parking lot and she noticed a police officer make a U-turn and follow them. He pulled over the vehicle with occupants Toney, Ballard, their daughter, and "another male." Ballard had a warrant and was placed under arrest. Toney testified that she had a warrant from a traffic ticket and was also placed under arrest.

{¶ 7} When asked, Toney stated that she had no knowledge of Ballard ever possessing or distributing methamphetamine, or any illegal substances. She stated that

---

[1]The pills were not ecstasy, or methylenedioxy-methamphetamine (MDMA), as originally believed.

3.

she has been with Ballard for nine years. Toney testified that she was not aware that Ballard had any illegal substances on his person prior to his arrest.

{¶ 8} During cross-examination, Toney agreed that she had known Ballard for approximately nine years and that she loves him. Toney was asked about her response to the question regarding her knowledge of Ballard previously possessing illegal substances. She reiterated that she was not aware of him possessing drugs. The State then asked: "Are you aware, Ms. Toney, that your boyfriend, the person you love, has been convicted of illegal conveyance of drugs of abuse?" Defense counsel objected and extensive discussions were held in chambers and included the following exchanges:

> THE COURT: Why are we asking this question? Because I'm going to say – I heard him utter mistrial and I think it's really damn close, and I think it's completely unnecessary. You – the statement is, essentially, proving possession, so why would you risk a potential mistrial –
> . . .
> [THE STATE]: Judge, if I could answer the question why. When they asked the question, have you ever known this person to possess drugs, have you ever – they are speaking to his character. He's not the type of person to possess drugs, I've known him for nine years, that's speaking to his character. And the State is allowed to test that knowledge regarding the character, opinion and reputation, and that's exactly what I'm doing by asking the question, are you aware? She's saying, I've never known, never heard of anything regarding him possessing drugs. Well, this is a person that she lives with, that she is very familiar with, and I think it's a fair question to ask if she's aware that he has been convicted of illegal conveyance of drugs.
> THE COURT: When was this conviction?
> [THE STATE]: 2006.
> . . .
> [DEFENSE COUNSEL]: Your Honor, how – first of all, how is this question even remotely appropriate? I mean, specific acts, inappropriate, first of all, as it relates to that. But, secondly, how would she – how is this question made in good faith, at all? He knows she doesn't know him in 2006, it's just a smear, Judge. I mean, the jury just heard it, you just rung a

4.

bell that can't be un-rung at this point, you knew it was going to be objected to, you knew it was going to be objected to right when you said it, and you still said it.

. . .

[THE STATE]: . . . This is a long-recognized manner of impeachment when a Defense witness opens the door by offering testimony as to the character or reputation of the Defendant, whether it be for truthfulness, whether it be for drug possession, whatever it may be. The State is allowed to test the basis of those – that knowledge by asking the questions, are you aware, did you know, type questions. It's a perfectly acceptable form of questioning recognized by the rules of evidence, specifically, Evidence Rule 405(A), recognized by case law.

{¶ 9} The court ultimately determined that the State's purpose in asking the question was not impeachment but to introduce evidence of specific prior acts. The court then denied the motion for a mistrial but sustained defense counsel's objection and issued the following curative instruction:

There was a question that was partially asked prior to going on the break. The question wasn't completed, nor was it answered. Therefore, there has been no evidence that was offered as a result of that partial question and you should disregard it from your consideration.

{¶ 10} Ballard testified that a few days prior to his arrest he was robbed by his nephews at his home in Toledo. Ballard had Toney and their young daughter stay in a hotel for a few nights in case the thieves returned. Ballard testified that he got the money for the hotel from a close friend. He stated that he used an app to send the friend money and in exchange, the friend gave him cash, all one-dollar bills, to pay for the hotel. Ballard testified that he did not stay at the hotel; he returned to Toledo to investigate the robbery.

5.

{¶ 11} Ballard testified that after checking them out, he pulled out of the hotel parking lot and observed a police cruiser "speeding" up behind them. Ballard pulled into a gas station and the cruiser followed. The officer walked up to the driver's window and asked if Ballard had a driver's license, he indicated negatively. The officer stated that he smelled burnt marijuana; Ballard informed him that he had a medical marijuana card but that he would not smoke it around his daughter.

{¶ 12} The officer informed him that there was a warrant for his arrest and placed him up against the cruiser. Ballard stated that he had no idea what the pills were that were pulled from his pocket. He explained that after the robbery he asked a neighborhood "street dude" to give him something for pain. He forgot the pills were in his pocket. When questioned, he denied that he was selling the pills.

{¶ 13} At the conclusion of the evidence, the court relevantly instructed the jury:

> The evidence does not include any statements that were stricken by the Court or that you were instructed to disregard. You must not speculate why an objection was sustained to any question, or what the answer to that question might have been, because these are questions of law and rest solely with the Court.

{¶ 14} Following deliberations the jury found Ballard not guilty of aggravated trafficking in drugs and guilty of aggravated possession of drugs. On September 22, 2023, Ballard was sentenced to an indefinite term of six to nine years of imprisonment. This appeal followed.

6.

## II. Assignment of Error

**{¶ 15}** Ballard raises the following assignment of error:

Assignment of Error: The trial court abused its discretion when it failed to declare a mistrial.

## III. Analysis

**{¶ 16}** Ballard's sole assignment of error is that the trial court erred by denying his motion for a mistrial. Ballard maintains that he was denied the right to a fair trial by the State's improper cross-examination question regarding Ballard's prior drug conviction. The State contends that Ballard raised the issue during Toney's direct examination and that it was proper under Evid.R. 405(A)

**{¶ 17}** A trial court's decision denying a mistrial is reviewed under an abuse of discretion standard. *State v. Durst*, 2020-Ohio-607, ¶ 46 (6th Dist.); *State v. Sage*, 31 Ohio St.3d 173, 182 (1987). "A mistrial is only proper 'when the ends of justice so require and a fair trial is no longer possible.'" *State v. Cantrill*, 2020-Ohio-1235, ¶ 47 (6th Dist.), quoting *State v. Franklin*, 62 Ohio St.3d 118, 127, (1991). Mistrials are "an extreme remedy." *Cantrill* at ¶ 47, citing *State v. Rossbach*, 2011-Ohio-281, ¶ 39 (6th Dist.), citing *Franklin* at 127. When the motion for a mistrial alleges prosecutorial misconduct, "'a reviewing court must undertake a due process analysis to determine whether the conduct of the prosecutor deprived the defendant of his or her due process right to a fair trial.'" *State v. Gomez*, 2019-Ohio-576, ¶ 59 (6th Dist.), quoting *State v. Saunders*, 98 Ohio App.3d 355, 358, (6th Dist.1994). "In determining whether

7.

prosecutorial misconduct occurred, we must first consider whether remarks were improper, and if we find improper remarks, whether those remarks prejudiced the accused's substantial rights." *Cantrill* at ¶ 48, citing *State v. Davis*, 2008-Ohio-2, ¶ 231, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984).

{¶ 18} At issue in this case is the applicability of Evid.R. 405(A) which provides:

(A) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

{¶ 19} "It is well-settled that by presenting evidence of a defendant's good character, a defense attorney 'opens the door' to cross-examination of such character witnesses regarding relevant specific instances of appellant's past conduct." *State v. Ogletree*, 2004-Ohio-6297, ¶ 45 (8th Dist.). "Such instances can include appellant's prior criminal convictions." *Id.*; *see also State v. Oghojafor*, 2023-Ohio-44, ¶ 80 (12th Dist.).

{¶ 20} In *State v. Jackson*, 57 Ohio St.3d 29 (1991), the defendant was convicted of aggravated murder, aggravated robbery, and a death penalty specification alleging murder in the course of aggravated robbery for an incident that occurred in 1987. During the sentencing hearing, the defendant's girlfriend, Carla Elliott, testified that the defendant was "the sweetest person," "a peaceful, loving person," and nonviolent. *Id.* at 39. On cross-examination, the State asked Elliott whether she knew Jackson had assaulted and robbed three women in 1983 and another woman in 1985. *Id.* Elliott

8.

responded that knowledge of these prior acts would not change her opinion about the defendant's character. *Id.*

{¶ 21} The Supreme Court of Ohio held that Evid.R. 405(A) permitted the State's cross-examination of Elliott as to the defendant's prior acts committed in 1983 and 1985 because "[Elliott's] characterization of [the defendant] as sweet, gentle, and nonviolent opened the door for cross-examination about specific instances of conduct sharply at variance with her opinion testimony." *Id.*

{¶ 22} Similarly, in *Ogletree*, 2004-Ohio-6297 (8th Dist.), the defendant was convicted in 2004 of two counts of gross sexual imposition. During the trial, the defendant presented testimony from three character witnesses, Renita Eslick, Eric Elders, and Rochelle Meredith. Each of the witnesses testified as to how long they had known the defendant and that they believed him to be an honest person who would not lie. On cross-examination, the State asked the witnesses whether they knew he was convicted of drug trafficking twice in 1993 and that he violated his probation in 1998. *Id.* at ¶ 19-21.[2]

{¶ 23} Ogletree appealed, arguing that the trial court erred in permitting the State to question the character witnesses about their knowledge of his past record. *Id.* at ¶ 39. In rejecting this argument, the court of appeals held "defendant presented character witnesses who testified that he has a reputation for honesty. Accordingly, under Evid.R.

---

[2]Notably, Elders testified that he had only known the defendant for 5 years; therefore, he would not have known the defendant at the time of the defendant's prior acts committed in 1993 or 1998.

9.

405(A), the State was permitted to cross-examine these witnesses regarding their knowledge of specific instances of defendant's conduct." *Id.* at ¶ 46.

{¶ 24} Here, while Toney was a fact witness, she also testified regarding Ballard's character or reputation. Specifically, Ballard's reputation for possessing or selling illegal drugs was placed at issue on direct examination when Toney denied knowledge of Ballard ever possessing or distributing illegal substances. And while Ballard contends that the State's attempted cross-examination of Toney regarding the 2006 conviction was improper because they were not a couple at that time, nothing in the language of Evid.R. 405(A) limited the State's cross-examination of Toney to prior instances of conduct that occurred once she and Ballard had an established relationship. Nor has Ballard cited any cases that impose such a limitation under Evid.R. 405(A). Thus, under Evid.R. 405(A), the prosecutor's question was not improper.

{¶ 25} Further, even if the question was improper, the trial court granted Ballard's objection and instructed the jury to disregard it. A jury is presumed to follow the court's instructions. *State v. Peabody*, 2024-Ohio-185, ¶ 53 (6th Dist.), quoting *State v. Clinton*, 2017-Ohio-9423, ¶ 52. A mistrial is an "extreme remedy," *Cantrill*, 2020-Ohio-1235 (6th Dist.), at ¶ 47, and the trial court properly employed less drastic means to cure any prejudice that may have resulted from the prosecutor's question.

{¶ 26} Accordingly, Ballard has not demonstrated that the court abused its discretion in denying his motion for a mistrial or that he was denied his due process right to a fair trial. Ballard's assignment of error is not well-taken.

10.

## IV. Conclusion

**{¶ 27}** Based on the foregoing, the September 22, 2023 judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, Ballard is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.