OPINION *Page 2 
{¶ 1} Defendant-appellant Cole Chaney appeals his conviction and sentence entered by the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On April 7, 2007, Albert Simia discovered Michael Kuligowski lying face down on the living room floor of Kuligowski's apartment, with his jacket over his head. Simia called the police, who observed Kuligowski lying dead on the living room floor dressed in a black jacket, black jeans and work boots. The right rear pocket of his pants was torn. His face was covered with blood, vomit and brain matter. The coffee table was turned over and there was "a lot of stuff" on the floor. Kuligowski's wallet was removed from his pants by one of the police officers in order to look for identification. The front door of the apartment had been damaged from the inside.
 {¶ 3} Following an autopsy, the Stark County Coroner determined Kuligowski's head and face had suffered substantial injury. His left cheek and nose were markedly swollen, and the right side of his face was markedly flattened. His lips were bruised, his upper lip was torn and his jaw was broken. The coroner further determined Kuligowski suffered a distinct gap between the cervical vertebrae and the base of the skull, an "atlanto-ocipital disarticulation" in which the head was dislocated from the body. The coroner found Kuligowski had a blood alcohol level of .06 and a high concentration of benzolyegonine in his body. He further determined Kuligowski was a chronic cocaine user. *Page 3 
 {¶ 4} The coroner concluded the cause of death was multiple blunt force injuries to his head and neck. He was struck a minimum of six and a maximum of ten or twelve times. Kuligowski would have died shortly after his head was transected from his spinal cord, around 1:00 a.m.
 {¶ 5} Rebecca Yarborough, a server at Alcarr's Tavern, told the Canton Police Kuligowski had been drinking with a blond haired girl and Appellant on the evening of April 6, 2007.
 {¶ 6} Tina Rodrigues lived in an apartment right below Kuligowski's apartment. She stated she heard yelling, banging around, and a man yelling "[I]'m not fucking around" and "[I]'m not fucking around mother fucker" around 1:00 a.m. The commotion lasted about 15 minutes. Finally, she observed a balding man and a woman leave the building, walking down an alley on Kennet Court.
 {¶ 7} Shirley Fisher told the police she had been drinking with Kuligowski and Appellant on the evening of April 6, 2007, at Alcarr's tavern. She said they wanted to keep drinking, and went up to Kuligowski's apartment. When she returned from using the bathroom, she saw Appellant hitting Kuligowski several times while he was sitting on the couch. Then, she saw Appellant grab Kuligowski by the ankles and drag him off the floor. Appellant continued hitting Kuligowski hard, and Fisher yelled for him to stop. Appellant continued the beating. Fisher later left the apartment with Appellant.
 {¶ 8} After his arrest, Appellant made a statement to the Canton Police Department that Kuligowski took a swing at him, hitting his back. Appellant told the police he went "crazy" and just started throwing "wild punches." Then, he knocked him out. He didn't know how many blows he struck, but knew Kuligowski was "thumped a *Page 4 
few times," maybe five or more. Appellant removed $100.00 from Kuligowski's wallet, ripping his pants in the process, and spent the money on drugs and alcohol.
 {¶ 9} The Stark County Grand Jury indicted Appellant on one count of felony murder, a violation of R.C. 2903.02(B), aggravated robbery, a violation of R.C. 2911.01(A)(3), and one count of felonious assault, a violation of R.C. 2903.11(A)(1). Following a jury trial, Appellant was found guilty of all counts. The trial court sentenced Appellant to eight years on the felonious assault charge, ten years on the aggravated robbery count and fifteen years to life for the murder charge. The trial court ordered the sentences run consecutively for a total of thirty years to life in prison.
 {¶ 10} Appellant now appeals, assigning as error:
 {¶ 11} "I. THE TRIAL COURT ERRED IN NOT FINDING THE CHARGE OF FELONIOUS ASSAULT TO BE AN ALLIED OFFENSE WITH THE RELATED CHARGE OF ATTEMPTED MURDER AND MERGE THESE COUNTS FOR SENTENCING.
 {¶ 12} "II. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 {¶ 13} "III. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."
 I. {¶ 14} In the first assignment of error, Appellant argues the trial court erred in not finding felonious assault to be an allied offense with the related charge of murder, and in failing to merge the counts in sentencing.
 {¶ 15} R.C. Section 2941.25(A) provides: *Page 5 
 {¶ 16} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 17} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 18} Recently, the Supreme Court of Ohio in State v. Cabrales,118 Ohio St.3d 54, 57, 2008-Ohio-1625, 884 N.E.2d 181, instructed as follows:
 {¶ 19} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import."
 {¶ 20} Nonetheless, even though the offenses are of similar import under R.C. 2941.25(A), Subsection (B) permits convictions for two or more similar offenses if the offenses were either (1) committed separately, or (2) committed with a separate animus as to each. SeeState v. Price (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph five of the syllabus. *Page 6 
 {¶ 21} The Cabrales opinion cites the Ohio Supreme Court opinion inState v. Fears (1999), 86 Ohio St.3d 329:
 {¶ 22} "Appellant contends that the kidnapping specification should have been merged with the aggravated robbery specification. By failing to merge these specifications, appellant argues, the trial court considered duplicative aggravating circumstances. Appellant maintains that, as a result, the court factored into the weighing process an improper aggravating circumstance, thereby violating his constitutional rights.
 {¶ 23} "In State v. Jenkins (1984), 15 Ohio St.3d 164, 15 OBR 311,473 N.E.2d 264, paragraph five of the syllabus, we held:
 {¶ 24} "`In the penalty phase of a capital prosecution, where two or more aggravating circumstances arise from the same act or indivisible course of conduct and are thus duplicative, the duplicative aggravating circumstances will be merged for purpose of sentencing. Should this merging of aggravating circumstances take place upon appellate review of a death sentence, resentencing is not automatically required where the reviewing court independently determines that the remaining aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt and that the jury's consideration of duplicative aggravating circumstances in the penalty phase did not affect the verdict.'
 {¶ 25} "In Jenkins at 198, 15 OBR at 340, 473 N.E.2d 264 at 295, fn. 29, we stated that "implicit within every robbery (and aggravated robbery) is a kidnapping." Therefore, a kidnapping specification merges with an aggravated robbery specification unless the offenses were committed with a separate animus. R.C. 2941.25(B). Thus, *Page 7 
when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime. State v. Logan (1979),60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, syllabus. However, where the restraint is prolonged, the confinement is secretive, or the movement is substantial, there exists a separate animus as to each offense.Id.
 {¶ 26} "As applied to this case, we find that the offenses of kidnapping and aggravated robbery were committed with no separate animus, as there is no showing of a prolonged restraint, significant asportation, or secret confinement of the victims. Therefore, we agree with appellant that the kidnapping specification merges with the aggravated robbery specification. Although merger should have taken place, under Jenkins, resentencing is not automatically required. Since we do not believe that the outcome of the penalty hearing was affected by the jury's consideration of duplicative aggravating circumstances, and because we find, in our independent review, that the remaining aggravating circumstances outweigh the mitigating circumstances, we conclude that appellant need not be resentenced."
 {¶ 27} Appellant was charged by indictment with felony-murder, in violation of R.C. 2903.02(B), for causing the death of Kuligowski while committing or attempting to commit aggravated robbery and/or felonious assault.
 {¶ 28} R.C. Section 2903.02(B) defines felony murder as:
 {¶ 29} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." *Page 8 
 {¶ 30} R.C. Section 2903.11(A)(1) defines felonious assault as:
 {¶ 31} "(A) No person shall knowingly do either of the following:
 {¶ 32} "(1) Cause serious physical harm to another or to another's unborn;"
 {¶ 33} We find the trial court did not err in failing to merge the two counts. Upon review of the record, we note a significant passage of time occurred between the initial blow and the final one. Appellant's commission of the felonious assault was prolonged and continued to such a degree resulting in the separate animus for murder. Assuming arguendo the counts were sufficiently aligned, the record supports a separate animus can be found from the prolonged and continued attack justifying the separate convictions and sentences.
 {¶ 34} The first assignment of error is overruled.
 II. {¶ 35} In the second assignment of error, Appellant argues his conviction is against the manifest weight and sufficiency of the evidence.
 {¶ 36} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St .3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at78 Ohio St.3d 390. *Page 9 
 {¶ 37} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, superseded by the State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St.3d 89.
 {¶ 38} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Thompkins, 78 Ohio St.3d at 386.
 {¶ 39} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N .E.2d 541 super ceded by constitutional amendment on other grounds as stated by State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N .E.2d 668, citing State v. Martin (1983), *Page 10 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 40} The record sub judice demonstrates Appellant admitted to "knocking out" Kuligowski, and then continuing to strike him numerous times. He further admitted to removing money from Kuligowski's wallet. Shirley Fisher observed Appellant beating Kuligowski, and told police Appellant told her he "blasted" Kuligowski.
 {¶ 41} Detective Daniel McCartney testified at trial he removed men's clothing, including bib overalls, from Appellant's mother's residence, which were determined to have Kuligowski's blood on the inside pocket. Appellant did not offer competent, credible evidence as to the possibility another person committed the offense to rebut the evidence on record.
 {¶ 42} We find Appellant's conviction on the charges is not against the manifest weight nor sufficiency of the evidence.
 III. {¶ 43} In the third assignment of error, Appellant asserts he was denied a fair trial due to prosecutorial misconduct in the rebuttal closing argument. Specifically, Appellant cites the prosecutor's reference to his defense as "SODDI or "some other dude did it" defense. He then described any claim of hairs belonging to someone other than Appellant present at the scene of the crime as "smoke and mirrors."
 {¶ 44} Upon review of the record, the prosecutorial remarks were merely permissible comment on Appellant's defense. The prosecutor did not use the *Page 11 
comments to argue the defense argument was a lie or fabrication, or otherwise insinuate the defense counsel had suborned perjury. State v.Smith (1984), 14 Ohio St.3d 13.
 {¶ 45} The third assignment of error is overruled.
 {¶ 46} Appellant's conviction in the Stark County Court of Common Pleas is affirmed.
 Hoffman, P.J., Edwards, J., and Delaney, J., concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, Appellant's conviction in the Stark County Court of Common Pleas is affirmed. Costs to Appellant. *Page 1