[Cite as *State v. Craig*, 2017-Ohio-4342.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 15CA22 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| FREDERICK JOSEPH CRAIG, JR., | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 06/12/17** |

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Eric M. Hedrick, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Keller J. Blackburn, Athens County Prosecutor, Merry M. Saunders, Assistant Athens County Prosecutor, Athens, Ohio, for Appellee.

McFarland, J.

{¶1} Frederick Joseph Craig, Jr., appeals the judgment entry of conviction entered on June 22, 2015, in the Athens County Court of Common Pleas. Craig entered a plea agreement and was subsequently convicted of attempted murder, two counts of felonious assault, two counts of aggravated robbery, two counts of aggravated burglary, tampering with evidence, and domestic violence. All charges arose from a domestic incident which occurred on March 11, 2015 at the home of Craig's ex-spouse, Julie Nott, f.k.a. Julie Craig. At sentencing the trial court merged several counts of the original indictment; however, on appeal, Craig asserts

in his sole assignment of error that the trial court erred by failing to merge
additional offenses that had a similar import, arose from the same conduct, and
were not committed separately or with a separate animus.  Upon review of the
record and consideration of Craig's arguments, we find merit to two of the issues
raised in Appellant's sole assignment of error.  Accordingly, the judgment of the
trial court is reversed in part and this matter is remanded for a limited resentencing
where the State will elect which of the allied offenses to pursue for sentencing
purposes.

## FACTS

{¶2} Much of the factual history related herein is taken from the testimony at
Appellant's sentencing and set forth in the sentencing transcript.  On March 11,
2015, 52-year-old Frederick J. Craig, Jr., ("Appellant") was present at the home of
his ex-wife, Julie Nott ("Ms. Nott").  The two had previously been married for
nearly 25 years.[1]  Appellant had a history of alcohol and drug abuse.  According to
Ms. Nott and her family, the two had always had a turbulent relationship.

{¶3} Appellant and Ms. Nott had been sitting on the same couch.  At some
point, Ms. Nott began to feel uncomfortable and informed Appellant he needed to
leave.  Appellant walked into the kitchen, retrieved a knife, and stabbed his ex-

---

[1] Appellant's and his ex-wife's divorce was finalized in January 2011.

wife three times in her stomach, chest, and side.[2]  He also nearly amputated her

thumb.  A neighbor and friend, Kelly Sikorski, testified she arrived to discover Ms.

Nott on the floor, bleeding, while Appellant stood over her with, "a smirk on his

face."

{¶4} Ms. Sikorski contacted 911 and Appellant was soon after arrested at the

scene.  Appellant had a ring belonging to Ms. Nott on his person.  The knife he

used to stab her was later found in a bag of dog food.[3]

{¶5} An Athens County Grand Jury issued the following indictment against

Appellant:

> Count 1, attempted murder, R.C. 2923.02/2903.02(A), a felony of the
> first degree;
>
> Count 2, attempted murder, R.C. 2923.02/2903.02(B), a felony of the
> first degree;
>
> Count 3, felonious assault, R.C. 2903.11(A)(1), a felony of the second
> degree;
>
> Count 4, felonious assault, R.C.2903.11(A)(2), a felony of the second
> degree;
>
> Count 5, aggravated robbery, R.C. 2911.01(A)(1), a felony of the first
> degree;
>
> Count 6, aggravated robbery, R.C. 2911.01(A)(3), a felony of the first
> degree;

---

[2] The officer responding to the scene described finding a broken knife with a black handle. Photographs of the knife were not transmitted in this appeal.  We presume the knife was a butcher knife, as referenced in the sentencing transcript.

[3] Again, the testimony is not clear, but the transcript indicates the knife and the dog food were found in the kitchen.

Count 7, aggravated burglary, R.C. 2911.11(A)(2), a felony of the first degree;

Count 8, aggravated burglary, R.C. 2911.11(A)(1), a felony of the first degree;

Count 9, tampering with evidence, R.C. 2921.12(A)(1), a felony of the third degree; and,

Count 10, domestic violence, R.C. 2919.25(A), a misdemeanor of the first degree.

{¶6} On June 4, 2015, Appellant entered into a plea agreement with the State of Ohio in which he pled to all counts except count two, attempted murder. The parties submitted sentencing memoranda for the court's consideration with regard to which counts could properly be merged for purposes of sentencing. On June 22, 2015, Appellant was sentenced as follows:

1) Count 1 - an 8-year prison term;

2) Count 3 - a 4-year prison term;

3) Count 7 - a 6-year prison term;

4) Count 8 - a 6-year prison term; and,

5) Count 9 - a 2-year prison term.

{¶7} The trial court ran each sentence consecutively for an aggregate total of 26 years in the state penal system. This timely appeal followed. Where relevant below, we again cite to the transcript of the sentencing hearing for additional facts in evidence.

ASSIGNMENT OF ERROR

"I. THE TRIAL COURT ERRED IN VIOLATION OF MR. CRAIG'S RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AND R.C. 2941.25, WHEN IT FAILED TO MERGE FOR SENTENCING OFFENSES THAT HAD A SIMILAR IMPORT, AROSE FROM THE SAME CONDUCT, AND WERE NOT COMMITTED SEPARATELY OR WITH A SEPARATE ANIMUS."

STANDARD OF REVIEW

{¶8} In *State v. Brewer,* 2014-Ohio-1903, 11 N.E.3d 317, we held that when reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Pulliam,* 4th Dist. Scioto No. 14CA3609, 2015-Ohio-759, ¶ 5; *Brewer* at ¶ 33. *See State v. Graham,* 4th Dist. Highland No. 13CA11, 2014-Ohio-3149, ¶ 31. R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law."

{¶9} "An appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Smith,* 4th Dist. Scioto No. 15CA3686, 2016-Ohio-5062, at ¶ 110, quoting *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. " '[T]he appellate court must * * * independently determine, without deference to the conclusion of

the trial court, whether the facts satisfy the applicable legal standard.' " *Id.* at ¶ 26,

quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71,

¶ 8.  The reviewing court owes no deference to the trial court's application of the

law to the particular facts of the case being reviewed. *Id.*

## LEGAL ANALYSIS

**{¶10}** We begin with the case law in the area of merger of allied offenses.

**{¶11}** R.C. 2941.25, Ohio's multiple counts statute, provides:

(A) Where the same conduct by defendant can be construed to
constitute two or more allied offenses of similar import, the
indictment or information may contain counts for all such offenses,
but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of
dissimilar import, or where his conduct results in two or more
offenses of the same or similar kind committed separately or with a
separate animus as to each, the indictment or information may contain
counts for all such offenses, and the defendant may be convicted of all
of them.

**{¶12}** The statute codifies the protections of the Double Jeopardy Clause of

the Fifth Amendment to the United States Constitution, and Section 10, Article I of

the Ohio Constitution, which prohibits the imposition of multiple punishments for

the same offense. *Smith, supra,* at ¶ 112, citing *State v. Underwood,* 124 Ohio

St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23.  In other words, upon finding one

or more counts to constitute two or more allied offenses of similar import, R.C.

2941.25(A) requires that the convictions be merged for the purposes of sentencing

and that the defendant only be sentenced on one of the counts. *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 5. A remand is required for the State to elect which charge to pursue. *Id.* at ¶ 17.

{¶13} The Ohio Supreme Court has previously interpreted R.C. 2941.25 to involve a two-step analysis for determining whether offenses are subject to merger. *Smith, supra,* at ¶ 113, citing *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. Under step one, it must be determined whether "it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other." *Id.* at ¶ 48. Put another way, if the conduct of the defendant constituting commission of offense one also constitutes commission of offense two, then the offenses are of similar import and the court must proceed to the second step. *Id.* Under step two of the analysis, it must be determined whether the offenses were committed as part of a single act, with a single state of mind. *Id.* at ¶ 49. If both steps of the analysis are met, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. On the other hand, if commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or with a separate animus for each offense, then under R.C. 2941.25(B), the offenses will not merge. *Id.* at ¶ 51.

{¶14} In *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio provided courts with further guidance with respect to the R.C. 2941.25 merger determination.  Although the Supreme Court did not explicitly overrule *Johnson,* it stated that the "decision in Johnson was incomplete" and that *Johnson's* syllabus language "does not offer the complete analysis necessary to determine whether offenses are subject to merger rather than multiple convictions and cumulative punishment." *Id.* at ¶ 16; *Smith, supra,* at ¶ 114.

{¶15} The *Ruff* decision provides three questions for a reviewing court to ask when a defendant's conduct supports multiple offenses in order to determine whether those offenses are allied offenses of similar import within the meaning of R.C. 2941.25:

1. Were the offenses dissimilar in import or significance?
2. Were they committed separately?
3. Were they committed with separate animus or motivation?

 If one of the questions is answered affirmatively, then separate convictions are permitted.  The conduct, the animus, and the import must all be considered. *Smith,* at ¶ 115.

{¶16} Under the sole assignment of error, Appellant raises three issues. Appellant first submits that the trial court erred when it failed to merge the offenses of attempted murder and felonious assault.  Appellant also argues the trial court erred when it failed to merge aggravated burglary under R.C. 2911.11(A)(1)

with felonious assault and/or attempted murder.  Finally, Appellant contends the trial court erred when it failed to merge the offense of aggravated burglary under R.C. 2911.11(A)(2) with the offense of aggravated burglary under R.C. 2911.11(A)(1).

Issue 1: Attempted murder and felonious assault

{¶17} Appellant argues in this case attempted murder and felonious assault are allied offenses of similar import requiring merger.  Appellant points out count one of the indictment, attempted murder, R.C. 2923.02/2903.02(A) alleged:

> "On or about the date of the offense set for above, in the County of Athens, [Mr. Craig] unlawfully did attempt to purposely cause the death of [Ms. Nott]."

Count three of the indictment, felonious assault, R.C. 2903.11(A)(1) alleges:

> "On or about the date of the offense set forth above, in the County of Athens, [Mr. Craig] unlawfully did knowingly cause serious physical harm to [Ms. Nott.]"

{¶18} Appellant contends that the harm caused by his assault of Ms. Nott with the knife is not separate and identifiable from the harm caused by attempted murder: the harm is one and the same. *See Ruff, supra,* at 25-26.  Appellant argues that in his intoxicated state in which he snapped and attacked Ms. Nott with a knife, the injuries from the knife were caused in a matter of seconds and therefore were "one discrete act" that simultaneously resulted in the commission of both felonious assault and attempted murder.  Appellant concludes that R.C. 2941.25

was enacted to prevent "multiple findings of guilt and corresponding punishments heaped on a defendant for closely related offenses arising from the same occurrence. *Johnson, supra,* at 43. Appellant requests this Court to hold that the offenses of attempted murder and felonious assault are allied offenses that merge under the statute.

{¶19} Generally speaking, the Supreme Court of Ohio has held that attempted murder and felonious assault, R.C. 2903.11(A)(2), are allied offenses. *See State v. Williams,* 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, ¶ 25. In order to commit the offense of attempted murder as defined in R.C. 2903.02(A), one must engage in conduct that, if successful, would result in purposely causing the death of another; to commit felonious assault as defined in R.C. 2903.11(A)(2), one must cause or attempt to cause physical harm to another by means of a deadly weapon.[4]

{¶20} We find the analysis in *State v. Anthony*, 37 N.E.3d 751, 8th Dist. Cuyahoga No. 10184, 2015-Ohio-2267, to be particularly instructive. In *Anthony,* the State presented facts at the sentencing hearing demonstrating that Anthony and the victim were friends. They had been drinking and doing drugs on the night of the incident. At some point, they started arguing. Anthony then stabbed the victim four times.

---

[4] In the case sub judice, count three of the indictment alleges felonious assault under R.C. 2903.11(A)(1), which specifies only the attempt to cause physical harm but does not include that it must occur by "means of a deadly weapon."

{¶21} In its analysis under the first prong of *Ruff,* the Eighth District observed there was nothing in the record to establish that the offenses resulted in separate and identifiable harm to establish that the offenses have a dissimilar import. The appellate court noted:

> "After arguing with the victim, Anthony stabbed the victim four times, and the victim died. The state argues that Anthony's 'conduct in this case could be broken down between fatal and non-fatal stab wounds, thus allowing the trial court to make appropriate findings.' But there is nothing in the record, at the plea or sentencing hearing, to establish there were fatal and non-fatal stab wounds."

{¶22} Regarding the second and third prongs of the *Ruff* test, the *Anthony* court next observed there was nothing in the record to establish that the offenses were committed separately or with a separate animus. In determining whether a separate animus exists for both felonious assault and attempted murder, courts have examined case-specific factors such as whether the defendant at some point broke "a temporal continuum started by his initial act"; whether facts appear in the record that "distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed"; whether, at some point, the defendant created a "substantial independent risk of harm"; and, whether a significant amount of time passed between the beginning of the felonious assault and the end of the attack. *State v. Williams,* 8th Dist. Cuyahoga No. 89726, 2008-Ohio-5286, ¶ 37; *State v. Hines,* 8th Dist. Cuyahoga No. 90125, 2008-Ohio-4236, ¶ 48; *State v. Chaney*, 5th Dist.

Stark No. 2007CA00332, 2008-Ohio-5559, ¶ 33.  Regarding animus, the *Anthony*

court found:

> "The evidence presented was simply that Anthony and the victim
> were doing drugs together, after which at some point they began
> arguing, and Anthony stabbed the victim four times in the back, and
> the victim died.  There are no other details to establish that there was a
> break in a " 'temporal continuum' " between the initial stabbing and
> the final stabbing such that we could find that there were separate acts
> or a separate animus. *State v. Roberts,* 180 Ohio App.3d 666, 2009-
> Ohio-298, 906 N.E.2d 1177, ¶ 14 (3rd Dist.), quoting *State v.
> Williams,* 8th Dist. Cuyahoga No. 89726, 2008-Ohio-5286, ¶ 37;
> *State v. Hines,* 8th Dist. Cuyahoga No. 90125, 2008-Ohio-4236, ¶ 48.
> Alternatively, there were no facts in the record to " 'distinguish the
> circumstances or draw a line of distinction that enables a trier of fact
> to reasonably conclude separate and distinct crimes were committed
> * * *.' " *Roberts,* quoting *Williams* (noting facts also may support a
> separate animus where the defendant's conduct "created a 'substantial
> independent risk of harm' ")."[5]

{¶23} The appellate court further found:

> "Moreover, just because there were multiple stabbings does not make
> it separate and distinct for purposes of our analysis.  Indeed, in
> *Johnson,* the Supreme Court declined to find that the defendant's
> multiple "blows" to a child supported multiple convictions for felony
> murder and the predicate offense of child endangering. *Johnson,* 128
> Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 56.  The
> court determined that the beating "was a discrete act that resulted in

---

[5] In *Roberts,* the defendant began attacking the victim with a steak knife and stabbed her until the blade broke from the handle.  Roberts then obtained a butcher knife from the kitchen, chased the victim down a hallway, and continued to stab her.  The victim sustained 19 or 20 stab wounds from the attack.  The Eighth District Appellate Court found that Roberts's initial stabbing of his victim with the steak knife constituted a separate animus for felonious assault and that his resumption of the stabbing with a butcher knife constituted a separate animus for attempted murder.  The cessation in the attack during which Roberts obtained a second knife constituted a line of distinction or break in the "temporal continuum," from which the court concluded that separate and distinct crimes were committed.

the simultaneous commission of allied offenses, child abuse and felony murder." *Id.* We note that *Johnson* is still good law on this point regarding what constitutes a separate act and a separate animus." *Anthony, supra,* at 51.

**{¶24}** Here, with respect to the first question, as explained in *Ruff* and *Anthony,* we answer the question in the negative. The felonious assault and attempted murder offenses did not involve separate victims. And importantly, the harm resulting from each offense, the assault and the attempted murder, is not separate and identifiable. The harm to Ms. Nott was not separate and identifiable and as in *Anthony,* there is nothing in the record to establish a difference between the fatal and non-fatal stab wounds. As such, we find the offenses are not of dissimilar import.

**{¶25}** As to the second and third questions posed in *Ruff* - were the offenses committed separately or with a separate animus - we also find they were not. While Ms. Nott's testimony at sentencing broke the incident into segments, we find it more likely that the events transpired very quickly with no break in the continuum. She testified as follows:

> "A:    I was sitting on the couch.
> Q:    And where was he?
> A:    He was sitting like right beside me.
> Q.    Okay.
> A.    And I told him. So I got up and moved in front of that chair and then I just stood up and told him it was time for him to go.
> Q:    Okay. And then he left.
> A:    He left and went in the kitchen.
> Q:    Came back?

A:     With a knife.

* * *

Q:     Okay. And what did you do when you saw him with the knife?
A:     I went down in the corner.
Q:     And then what happened next?
A:     And then he stabbed me in the stomach.
Q:     Okay and what happened after he stabbed you in the stomach?
A:     I tried to kick him.
Q:     Okay.
A:     And yell for help.
Q:     Okay.  Where was he?  Did he get up?  Was he down with you?
A:     He was up after he got done with the first stab.
Q:     Okay and what did he try to do after that?
A:     Stab me again.
Q:     No what did you do after?
A:     What did I do,-
Q:     Yea.
A:     I tried to crawl.
Q:     Where did you crawl to?
A:     Like right there.
Q:     Where your red shirt is in the picture?
A:     Yes.
Q:     Okay.  And what happened when you crawled there?
A:     He stabbed me again.
Q:     And where did he stab you a there, at that point?
A:     In the chest.
Q:     Okay.  Did he also stab you in this (inaudible)?
A:     He stabbed me here and here.
Q:     Okay.  So there were three stabs there?
A:     There was three stabs.
Q:     And did anything happen to your thumb?
A:     He cut my thumb off."

{¶26} As in *Anthony,* there is nothing in the record to establish that the

offenses were committed separately or with a separate animus.  The evidence was

that Appellant and his wife were together in her home when she asked him to

leave.  He retrieved a knife from the kitchen and stabbed her 3 times, and injured

her stomach, chest, and thumb.  Despite the trial court's findings that:

> "[The attempted murder count] is independent and does not merge
> into any other counts.  The court found that the first stabbing * * *
> constituted the felonious assault.  After the assault, the victim was
> trying to escape, and Defendant pursued her and stabbed her again,
> constituting attempted murder * * *."

 there are no details to establish that there was a break in the continuum of events

between the initial stabbing and the final stabbing.  There were no facts in the

record to draw a line of distinction which would enable the trier of fact to

reasonably conclude separate and distinct crimes were committed.

{¶27} In addition to Ms. Nott's testimony about the divorce, she testified she

had talked to Appellant over years about the potential of a divorce, and testified he

always threatened he would kill her if she divorced him.[6]  Appellant arrived at her

home without a weapon.  Given the facts that the parties' divorce had been final

only a short time, that Appellant may have drawn incorrect conclusions about the

diamond ring Ms. Nott was wearing, and the fact she asked him to leave, it may be

inferred that Appellant, realizing he had "lost" her forever, went into the kitchen to

get a knife and kill her.  We find no evidence of a separate animus for the crimes of

attempted murder and felonious assault in this case.

---

[6] At the sentencing, the victim's advocate also read Ms. Nott's father's victim impact statement into the record
which contained this comment: "So you decided if you couldn't have her no one would."

{¶28} Based on the foregoing application of the *Ruff* test to the facts herein, we find the convictions for attempted murder and felonious assault are allied offenses of similar import and should have been merged.  A remand is required.  As such, we find merit to Appellant's first argument under the sole assignment of error and it is hereby sustained.  The judgment of the trial court is reversed and the matter is remanded for a limited resentencing where the State will elect which conviction to pursue for sentencing purposes.

Issue 2: Aggravated burglary under R.C. 2911.11(A)(1)
and felonious assault and/or attempted murder

{¶29} We have determined above that the trial court should have merged Appellant's convictions for the attempted murder and felonious assault offenses.  Appellant also argues that in his case, the aggravated burglary offense under R.C. 2911.11(A)(1) should also have been merged with attempted murder and felonious assault.  The relevant statutory language for attempted murder and felonious assault has been set forth above.  Appellant's indictment on count eight, aggravated burglary, R.C. 2911.11(A)(1), alleged:

> "On or about the date of the offense set forth above, in the County of Athens, unlawfully did, by force, stealth, or deception, trespass, as defined in section 2911.21(A)(1) of the Revised Code, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when [Ms. Nott], a person other than the accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, to wit: Theft, R.C. 2913.02, and the offender

recklessly inflicted, or attempted or threatened to inflict physical harm on [Ms. Nott.]"

{¶30} Appellant argues that the harm caused by the aggravated burglary offense is not separate and identifiable from the harm caused by his assault of Ms. Nott with the knife. Appellant cites *State v. Nguyen,* 4th Dist. Athens No. 14CA42, 2015-Ohio-4414, wherein this Court explained that the force or threat of force used in committing rape or kidnapping was the same harm as the physical harm inflicted, or attempted or threatened in committing aggravated burglary. *Id.* at ¶ 35. Appellant contends the physical harm that resulted from his attempted murder and felonious assault was the same physical harm that resulted from the aggravated burglary. Furthermore, he argues the aggravated burglary was not committed separately or with a separate animus from the attempted murder/felonious assault conduct. The conduct - physical harm to the victim with the knife - was the same conduct that established the physical harm requirement of the aggravated burglary. While *Nguyen* was decided differently, ultimately because there was a separate victim, Appellant argues that *Nguyen* dictates that aggravated burglary under R.C. 2911.11(A)(1) merges with attempted murder and/or felonious assault.

{¶31} In response, the State argues the testimony at sentencing was that when Ms. Nott requested Appellant to leave, he instead went into the kitchen, grabbed a knife, and brandished it. The State argues at that point, the aggravated

burglary was completed and additional criminal acts were completed.  The State

directs us to the trial court's finding as follows:

> "The Court also finds that he committed aggravated menacing by brandishing the weapon to her * * * aggravated menacing in that he did knowingly cause another to believe that he would cause serious physical harm to her and it's also in violation of R.C. 2903.22 regular menacing that he actually caused her to believe he would at least cause her physical harm by brandishing the weapon and brandishing it.  He certainly committed disorderly conduct by brandishing the weapon causing violent or turbulent behavior as well.  At the very minimum.  Under 2917.11 by recklessly causing inconvenience, annoyance or alarm to another by doing any of the following.  The Court finds that he actually did that in threatening to harm persons or property by engaging in violent or turbulent behavior and persisted in that behavior she had, she actually testified that she tried to kick him away and uh, could not do so and as a result she was stabbed a second time so the Court finds that he was at a minimum persistently disorderly."

{¶32} The State concludes the harm committed during the felonious assault

or attempted murder was not the same that was committed during the aggravated

burglary.  When Appellant retrieved a knife and brandished it, Ms. Nott backed up

in a corner afraid for her life.  This harm of threat, menacing, inconvenience, and

annoyance is not the same as the serious physical harm suffered in the felonious

assault or attempted murder.

{¶33} Ohio cases have consistently held that aggravated burglary and

felonious assault are not allied offenses of similar import. *State v. Jacobs,* 4th Dist.

Highland No. 11CA26, 2013-Ohio-1502, ¶ 48; *State v. Barker,* 183 Ohio App.3d

414, 2009-Ohio-3511, 917 N.E.2d 324, ¶ 18 (2nd Dist.); citing *State v. Johnson,*

5th Dist. Delaware No. 06CAA070050, 2006-Ohio-4994; *State v. Jackson*, 21

Ohio App.3d 157, 487 N.E.2d 585 (8th Dist.1985); *State v. Feathers,* 11th Dist.

Portage No. 2005-P-0039, 2007-Ohio-3024; *see also State v. Carter,* 8th Dist.

Cuyahoga No. 61502, 1993 WL 7700 (January 14, 1993).  However, these cases

and the reasoning applied therein pre-date the Supreme Court of Ohio's test and

decisions in *Johnson* and *Ruff.*

{¶**34**} In *State v. Pickett,* 4th Dist. Athens No. 15CA13, 2016-Ohio-4593,

Pickett was convicted of aggravated burglary and complicity to felonious assault.

On appeal Pickett argued that the trial court incorrectly determined he could be

subject to multiple punishments and did not merge his convictions for sentencing.

The trial court determined that Pickett committed the offenses separately,

completing his aggravated burglary before committing the complicity to felonious

assault offense.  The court noted that Pickett trespassed into one victim's residence

with purpose to commit a theft offense and that he inflicted physical harm upon a

second victim, and that he also possessed a deadly weapon.  Apart from this

conduct, the court found that Pickett possessed a separate intent to aid or abet his

co-defendant in causing serious physical harm to the injured victim.  We held,

"Given the trial court's factual considerations, we are unable to determine that it

inappropriately determined that appellant's conduct constituted two offenses of

dissimilar import. *See State v. Ortiz,* 6th Dist. Lucas No. L-14-1251, 2016-Ohio-974."

{¶35} In *Ortiz,* the defendant argued that under the facts of his particular case, the offenses of aggravated robbery, aggravated burglary, and felonious assault were allied and should have been merged. However, the Sixth District Court of Appeals disagreed. The appellate court found as to the aggravated burglary charge, the evidence presented at trial demonstrated that the aggravated burglary was committed when Ortiz hit his victim and forcibly pushed his way into the victim's apartment. The court further found the aggravated robbery occurred when Ortiz punched the victim and demanded his wallet. Once the victim was knocked to the ground, Ortiz committed a felonious assault by "stomping" on him. *Id.* at 32. The appellate court found no merit to Ortiz's argument.

{¶36} We also find *State v. Gillman,* 46 N.E.3d 130, 2015-Ohio-4421, instructive as to the analysis of the issue of separate and identifiable harm. Gillman was convicted of various burglary and theft offenses as a result of entering cabins owned by the Kurnot family in Vinton County in June 2013. On appeal, Gillman argued the trial court erred by failing to merge his convictions for burglary in counts one and two with associated theft offenses under counts three and four. In analyzing the merger argument pursuant to *Ruff*, this court utilized the statement of one of the victims, Mrs. Kurnot, to examine and to aid in the determination as to

whether the harm that resulted from the theft offenses was separate and identifiable

from the harm that resulted from the respective burglary offenses.  We observed at

¶ 23:

> "Mrs. Kurnot explained to the trial court that their sense of privacy
> had been 'invaded and compromised.'  This relates to the harm that
> resulted from the burglary offenses.  Next, Mrs. Kurnot described for
> the trial court that they have suffered economic damage when she
> said, 'Our pocketbooks have suffered because we had to replace the
> items that were stolen.'  The economic damage relates to the harm
> that resulted from the theft offenses. * * * We find that Mrs. Kurnot
> identified separate harm resulting from the burglary offenses than the
> harm that resulted from the theft offenses.  Therefore, the answer to
> whether the harm from each offense is separate and identifiable is
> 'yes.' "

{¶37} In the case sub judice, we find the aggravated burglary to be

dissimilar in import and significance.  Answering the first question under *Ruff* in

the affirmative, we find that there was separate and identifiable emotional harm or

trauma, as opposed to the physical harm incurred by the stabbings.  When Ms. Nott

asked, Appellant refused to leave, obtained a knife without permission, and

brandished it at her, forcing Ms. Nott to retreat to a corner of the room.  Appellant

committed trespass, theft, and menacing.  The harm was separate and identifiable

in that the fear and emotion Ms. Nott felt was separate and identifiable from the

actual physical injuries she suffered shortly thereafter.

{¶38} Although we need not address the second question presented by *Ruff*:

"Were [the offenses] committed separately," it is also answered affirmatively.

Appellant committed his aggravated burglary causing Ms. Nott fear and turbulence prior to actually physically harming her. Because answering any one of the *Ruff* questions affirmatively permits separate convictions, we need not consider the final question regarding separate animus or motivation.

{¶39} Based on the foregoing, we find that the trial court was not required to merge Appellant's conviction for aggravated burglary into the attempted murder and felonious assault as allied offenses of similar import. Accordingly, we find no merit to Appellant's argument herein and this portion of the trial court's judgment shall remain intact.

Issue 3: Aggravated burglary under R.C. 2911.11(A)(2)
and aggravated burglary under R.C. 2911.11(A)(1)

{¶40} Finally, Appellant argues his aggravated burglary offense under count seven of the indictment should have merged with the count eight offense. Appellant points to count seven, R.C. 2911.11(A)(2) which states:

> "On or about the date of the offense set forth above, in the County of Athens, unlawfully did, by force, stealth, or deception, trespass, as defined in section 2911.21(A)(1) of the Revised Code, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when [Ms. Nott], a person other than the accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, to wit: Theft, R.C. 2913.02, and the offender had a deadly weapon or dangerous ordnance, to wit: knife, on or about his person or under his control."

{¶41} Count eight, also aggravated burglary, R.C. 2911.11(A)(1), alleges:

"On or about the date of the offense set forth above, in the County of Athens, unlawfully did, by force, stealth, or deception, trespass, as defined in section 2911.21(A)(1) of the Revised Code, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when [Ms. Nott], a person other than the accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, to wit: Theft, R.C. 2913.02, and the offender recklessly inflicted, or attempted or threatened to inflict physical harm on [Ms. Nott]."

{¶42} In *State v. Craig*, 8th Dist. Cuyahoga No. 94445, 2011-Ohio-206, pre-*Ruff*, the appellate court noted the Ohio Supreme Court's trend towards finding subsections of other similar offenses to be allied, and in analyzing the offenses in that case pursuant to *Johnson,* found the offenses to be allied.  Craig was convicted of two counts of aggravated burglary against a victim, Perez, in violation of R.C. 2911.11(A)(1) and R.C. 2911.11(A)(2).  The trial court did not merge these convictions.  However, the appellate court noted the victim named in each charge was the same, the crimes occurred with the same animus, and the charges both arose from the same conduct. *See also State v. Cotton,* 120 Ohio St.3d 321, 2008-Ohio-6249, 898 N.E.2d 959 (holding that felonious assaults in violation of R.C. 2903.11(A)(1) and (2) are allied offenses of similar import under R.C. 2941.25(A)); *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, (holding that aggravated assault[s] in violation of R.C. 2903.12(A)(1) and (A)(2) are allied offenses of similar import).

{¶43} More recently, in *State v. Burton,* 7th Dist. Jefferson No. 13JE39,

2015-Ohio-2247, the appellate court engaged in a full discussion of the merger of

aggravated burglary counts under R.C. 2911.11(A)(1) and (A)(2). *Burton* cited

*State v. Marriott,* 189 Ohio App.3d 98, 2010-Ohio-3115, 937 N.E.2d 614 (2nd

Dist.), wherein the appellate court held that aggravated burglary convictions under

R.C. 2911.11(A) were subject to merger where one structure was involved, even

though there were two separate occupants who were physically harmed during the

burglary. The *Marriott* court reasoned that aggravated burglary is not defined in

terms of harm to another, but rather essentially that the trespass is at the heart of

the offense:

> "[T]he purpose of R.C. 2911.11(A) is to elevate burglary to an
> aggravated offense when the defendant's conduct raises the risk of
> harm to persons by having a deadly weapon or by threatening or
> inflicting physical harm. The aggravated-burglary statute thus
> criminalizes and enhances the seriousness of the trespass under those
> circumstances. However, R.C. 2911.11(A) is not meant to criminalize
> an offender's conduct toward the occupants of the structure; rather, the
> prosecutor may charge the defendant with an assault offense to satisfy
> that interest. Accordingly, when a defendant, such as Marriott, enters
> a residence and threatens, attempts, or inflicts physical harm on more
> than one occupant during the burglary, the aggravated-burglary
> offenses merge. *Marriott* at ¶ 46." *Burton* at ¶ 57.

{¶44} *Burton* also discussed the appellate court's analysis in *State v. Adkins,*

8th Dist. Cuyahoga No. 95279, 2011-Ohio-5149. There, the appellate court noted:

"Although the seriousness of a burglary offense is related to the relative risk to

persons, the burglary offenses punish trespasses into structures. * * * [I]t is [the

defendant's] single entry into the dwelling with the requisite intent that constitutes

the crime." (internal citations omitted.) *Id.* at ¶ 39. *Burton* at ¶ 59. The *Adkins*

court continued:

> "Should the state prevail in its argument that a defendant may be
> convicted on more than one count of burglary based upon the number
> of persons present in the residence when the defendant entered, it
> would turn 500 years of burglary law on its head. It would transform
> burglary from an offense against the sanctity of the dwelling house
> into an offense against the person. Logically, one of the unintended
> consequences of such a transformation may be that the act of burglary,
> which is completed as soon as the dwelling is entered with the
> requisite intent, will be viewed as an allied offense to the crimes the
> defendant commits therein. *See [State v.] Bridgeman*, [2nd Dist. No.
> 2010 CA 16, 2011-Ohio-2680]. This court does not believe such was
> the legislature's intent. *[State v.] Gardner,* [118 Ohio St.3d 420, 2008-
> Ohio-2787, 889 N.E.2d 995]. *Adkins* at ¶ 41." *Burton* at ¶ 60.

Here, the court concluded: "In this case, Adkins made a single entry into Barr's

house. Regardless of the number of people in the house, he committed that

particular act with a single animus; thus, he could not be convicted for more than

one count of aggravated burglary." *Adkins* at ¶ 40 (citations omitted.) *Burton* at

¶ 61.

{¶45} *Burton* also cited *State v. Lynott*, 8th Dist. Cuyahoga No. 89079,

2007-Ohio-5849, wherein the Eighth District concluded that failing to merge

multiple counts of aggravated burglary involving one structure was plain error:

> "Lynott entered only one residence for the purposes of committing a
> criminal offense. * * * As this court has observed, the basic offense of
> "burglary" primarily is defined in terms of the offender's conduct,
> rather than his conduct toward another person. *State v. Powers, supra,*
> ¶ 12. At common law, the offense was intended to punish the
> 'breaking of the close.' * * * [R.C. 2911.11(A)] which defines

aggravated burglary, raises the degree of the criminal conduct if certain factors attend the offender's entry. However, it does not contain an additional penalty for each person affected by the conduct. *See, e.g., State v. Johnson, supra; see also State v. Allen,* 8th Dist. Cuyahoga No. 82618, 2003-Ohio-6908, citing *State v. Harrison* (Dec. 9, 1999), Cuyahoga App. No. 75294. *Lynott* at ¶ 27-30." *Burton* at ¶ 58.

{¶46} The *Burton* court observed that although *Marriott, Lynott and Adkin*s were decided under earlier variants of the allied offenses test, the same result was dictated when the issue was viewed through the Ohio Supreme Court's test set forth in *Ruff. Burton,* ¶ 63. *Burton* held:

"While on first blush it might appear, in light of the separate victims, that the aggravated burglary offenses herein are of dissimilar in import or significance—in other words, that each offense caused separate, identifiable harm—under the rationale of *Marriott, Lynott* and *Adkins* those victims are what elevated the offense from a simple burglary to the more severe "aggravated" form of the offense. At the heart of an aggravated burglary is the trespass. And there was only one identifiable trespass into the home here."

{¶47} The *Burton* court further held under the rationale of *Marriott, Lynott* and *Adkins,* count 4, Burton's aggravated burglary conviction under R.C. 2911.11(A)(2), should also have merged with counts 1, 2 and 3.

"Count 4 of the Indictment contains the same language regarding the trespass with intent to commit a criminal offense as counts 1 through 3; however, the aggravating factor in count 4 is that Burton had a deadly weapon or dangerous ordnance on or about his person. Again, there was only one identifiable trespass, so count 4 must also merge." *Id.* at ¶ 64.

{¶48} In this case, Appellant argues the record does not support

the findings made by the trial court regarding count seven.  The trial court found as

follows:

> "As to Count Seven, the Court found that Defendant entered the home
> a second time, after Kelly Sikorski had followed him out of the house;
> that he re-entered the home with the knife, took the ring from the
> victim, and also hid it in the dog food bag.  There was a causal break
> in the sequence of events when Kelly Sikorski followed him out of the
> home."

{¶49} At sentencing, Kelly Sikorski testified upon arriving at the scene,

Appellant had his hand behind his back and he opened the door with his left hand.

She did not see a knife in his hands.  Once Sikorski determined what had

happened, she ordered Appellant out of the house.  She actually followed him out

of the house.  Then she called 911.  Her testimony indicates she had to walk to the

mailbox to get Ms. Nott's address for 911.  At this point, Sikorski's testimony is

that she walked "to the side" to keep an eye on Appellant.  However, Sikorski does

not testify she saw Appellant go into the house a second time.

{¶50} Chief Nagucki of the Glouster police testified he was dispatched to

Julie Nott's residence pursuant to the 911 call.  As he was arriving, from a distance

he saw Appellant walking down the steps.  His testimony does not include any

evidence that he saw Kelly Sikorski walking behind Appellant.  Chief Nagucki

further testified that Appellant had Ms. Nott's ring, and that Appellant first told

them the knife was in a trash can, but later advised it was in the bag of dog food.

{¶51} Appellant testified that when he saw what he did, he "freaked out," picked up the ring, "and that's when Ms. Sikorski come to the door." We must agree with Appellant that the record does not contain competent credible evidence to support even an inference that Appellant entered the house a second time. While the events which unfolded quickly before Ms. Sikorski's eyes and upon Chief Nagucki's arrival may have indicated to the State that Appellant entered the second time, we find that the actual testimony on this point, entered into the record, is only speculative.

{¶52} Ms. Sikorski did not observe Appellant enter a second time. Chief Nagucki testified only to Appellant's exit. While the State proffered that Appellant must have entered a second time in order to break and dispose of the knife, and that may very well be true, the evidence to support this finding is not competent and credible. A court will give deference to the factual determinations of a trial court if it is supported by competent, credible evidence. *Myers v. Garson,* 66 Ohio St.3d 610, 614, 614 N.E.2d 742 (1993).

{¶53} For the foregoing reasons, we find the trial court's finding that Appellant entered Ms. Nott home a second time is not supported by competent credible evidence. As stated above, at the "heart" of an aggravated burglary is an identifiable trespass. In this case, there is evidence of only one trespass into Ms.

Nott's home.  Since Appellant made only one identifiable trespass into the residence, he may be convicted of only one aggravated burglary.

{¶54} Appellant's third argument that his aggravated burglary convictions should have merged for sentencing has merit.  The aggravated burglary convictions are allied offenses of similar import that the trial court should have merged.  As such, a remand is required.  Accordingly, the judgment of the trial court is reversed in part, and the matter is remanded for a limited resentencing where the State will elect which aggravated burglary conviction to pursue for sentencing purposes.

**JUDGMENT REVERSED IN PART
AND REMANDED FOR FURTHER
PROCEEDINGS CONSISTENT WITH
THIS OPINION.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  Appellant and Appellee shall split costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.:  Concur in Judgment Only.

For the Court,


BY:   _____
Matthew W. McFarland, Judge


### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**